J-A09025-18

2018 PA Super 303

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| J.C. | : | |
| Appellant | : | No. 1059 WDA 2017 |

Appeal from the Order Entered February 16, 2017
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s): CP-02-JV-0001886-2011

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

OPINION BY DUBOW, J.:                                      **FILED NOVEMBER 09, 2018**

Appellant, J.C., appeals from the February 16, 2017 Order entered in the Court of Common Pleas of Allegheny County, which denied J.C.'s Petition for Writ of *Habeas Corpus*.  After careful review, we affirm.

The juvenile court set forth a thorough and accurate factual and procedural history in its Pa.R.A.P. 1925(a) Opinion, which we need not repeat here.  *See* Trial Court Opinion, filed 10/17/17, at 1-5.  In sum, on April 9, 2010, the juvenile court adjudicated then 13-year-old J.C. dependent and placed him at Mel Blount Youth Home.  On November 7, 2011, the juvenile court adjudicated J.C. delinquent after he admitted to Indecent Assault of a Child Under 13 while living at his dependent placement.  At that time, the juvenile court deferred disposition pending a mental health evaluation.  On November 29, 2011, the juvenile court entered a Delinquency Commitment Order, which committed J.C. to Adelphoi Village and ordered that the court

review J.C.'s placement in five months. The juvenile court made a finding that "child is in need of treatment, supervision and rehabilitation" and that the commitment was "consistent with the protection of the public interest[.]" Delinquency Commitment Order, 11/29/11. At the five-month review hearing on April 9, 2012, the juvenile court made a finding that the "placement continues to be necessary and appropriate" and ordered J.C. to remain at Adelphoi Village. Placement Review Order, 4/9/12.

Following that hearing, the juvenile court conducted five review hearings.[1] At each of the review hearings, the juvenile court provided J.C. notice of the hearing, an opportunity to be heard, and the assistance of counsel. Trial Court Opinion, filed 10/17/17, at 8. Additionally, at each review hearing, the juvenile court "addressed whether the commitment would be extended or modified and whether a modification would effectuate the purpose of the original order" and made a determination of whether the disposition and commitment of J.C. was consistent with the purpose of the Juvenile Act. *Id.*

On March 3, 2015, eight months prior to J.C.'s four-year commitment anniversary, J.C.'s probation officer filed a Failure to Adjust Allegation alleging that J.C. viewed pornography on a computer while in placement, which was against the rules and regulations, and that Adelphoi Village requested J.C.'s removal from the program. On the same day, after an emergency hearing

---

[1] The juvenile court held review hearings on September 17, 2012, December 13, 2012, March 7, 2013, September 8, 2014, and January 26, 2015.

where J.C. was present, the juvenile court issued a Detention Order that committed J.C. to a secure detention at the Shuman Center pending alternative placement, and made a finding that he posed a threat to the community. **See** Detention Order, 3/3/15. On March 10, 2015, after a hearing where J.C. was present, the juvenile court ordered that J.C. remain committed, placed J.C. at Cove Prep, and made findings that "child is in need of treatment, supervision and rehabilitation" and that the commitment was "consistent with the protection of the public interest[.]" Delinquency Commitment Order, 3/10/15.

Subsequently, the juvenile court held six additional review hearings.[2] At each of the review hearings, the juvenile court provided J.C. notice of the hearing, an opportunity to be heard, and the assistance of counsel. Trial Court Opinion, filed 10/17/17, at 8. Additionally, at each review hearing, the juvenile court "addressed whether the commitment would be extended or modified and whether a modification would effectuate the purpose of the original order" and made a determination of whether the disposition and commitment of J.C. was consistent with the purpose of the Juvenile Act. **Id.**

On January 11, 2017, J.C. filed a Petition for Writ of *Habeas Corpus* alleging that the juvenile court detained J.C. illegally for over a year. After hearing oral argument on the matter, the juvenile court denied the Petition for Writ of *Habeas Corpus* on January 20, 2017. On January 24, 2017, J.C.

---

[2] The juvenile court held review hearings on June 29, 2015, October 5, 2015, May 16, 2016, August 8, 2016, August 22, 2016, and September 1, 2016.

filed a Petition for Reconsideration, which the juvenile court denied on February 16, 2017. On March 8, 2017, J.C. filed a Motion to Certify Interlocutory Order for Appeal, which the juvenile court granted on April 8, 2017.

On April 27, 2017, J.C. filed a Petition for Review with this Court. On July 24, 2017, this Court granted the Petition for Review and ordered the matter to proceed as an appeal. Both parties complied with Pa.R.A.P. 1925.

J.C. raises the following issue for our review:

> When J.C. has been adjudicated delinquent of a first-degree misdemeanor punishable by up to five years' imprisonment, J.C. was initially committed to a placement facility for an indefinite period of time, the Commonwealth now wants to extend J.C.'s commitment beyond four years, but J.C. has already been continuously detained for more than the statutory maximum sentence of five years, whether J.C. must be released when the plain language of 42 Pa.C.S.[] § 6353(a) requires a hearing to have been held specifically to address whether to extend or modify J.C.'s initial commitment period and that such hearing needs to be held prior to the expiration of four years since the initial commitment, but the Commonwealth never filed for an extension pursuant to th e statute and, therefore, the trial court never held a hearing pursuant to the statute?

Appellant's Brief at 5.

J.C. avers that the juvenile court detained him illegally in violation of Section 6353 of the Juvenile Act, which, *inter alia*, prohibits a court from detaining a child for more than four years unless the juvenile court meets

certain requirements.[3]  **See** 42 Pa.C.S. § 6353(a).  Specifically, J.C. argues that the Commonwealth failed to file a petition requesting to extend J.C.'s initial commitment beyond four years and the juvenile court failed to hold a hearing on the issue prior to the expiration of four years as required by the statute, rendering J.C.'s commitment illegal.  **See** Appellant's Brief at 13.

In turn, the Commonwealth argues that the language of the statute does not require the Commonwealth to file a petition for extension or the juvenile court to hold a hearing on said petition.  **See** Appellee's Brief at 8.  Rather, the Commonwealth asserts that the statute requires the juvenile court to conduct regularly scheduled commitment review hearings, which occurred and indicated a need for continued confinement.[4]  **Id.** at 8.

---

[3] Section 6353 prohibits a court from detaining a child for more "than four years or a period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less."  42 Pa.C.S. § 6353(a).  In this case, J.C. admitted to Indecent Assault as a misdemeanor of the first degree, an offense punishable by up to five years imprisonment when committed by an adult.  **See** 18 Pa.C.S. § 1104(1). Because four years is less than the potential five-year adult sentence, the statute prohibits the juvenile court from detaining J.C. for more than four years unless the court meets certain requirements.

[4] The Commonwealth also argues that this appeal is moot because J.C. turned 21 years old on August 8, 2017, and is no longer subject to court supervision as a juvenile.  **See** Appellee's Brief at 19.  "Generally, an actual claim or controversy must be present at all stages of the judicial process for the case to be actionable or reviewable . . . [and] [a]n issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect."  **Deutsche Bank Nat. Co. v. Butler**, 868 A.2d 574, 577 (Pa. Super. 2005).  J.C. is currently committed for involuntary treatment pursuant to 42 Pa.C.S. § 6403, which states, in relevant part, that a person may be subject to court-ordered commitment for involuntary treatment if the person

The interpretation and application of a statute is a question of law.  *C.B. v. J.B.,* 65 A.3d 946, 951 (Pa. Super. 2013).  As with all questions of law, we must employ a *de novo* standard of review and a plenary scope of review to determine whether the court committed an error of law.  *Id.*

When interpreting a statute, this court is constrained by the rules of the Statutory Construction Act of 1972 (the "Act").  1 Pa.C.S. §§ 1501-1991.  The Act makes clear that the goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly while construing the statute in a manner that gives effect to all its provisions.  *See* 1 Pa.C.S. § 1921(a). The Act provides:  "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  1 Pa.C.S. § 1921(b).  It is well settled that "the best indication of the General Assembly's intent may be found in a statute's plain language."  *Cagey v. Commonwealth*, 179 A.3d 458, 462 (Pa. 2018). Additionally, we must presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable.  *See* 1 Pa.C.S. § 1922(1).  Moreover, the Act requires penal provisions of statutes to be strictly construed and any ambiguity in the language of a penal statute should

has been adjudicated delinquent for an act of sexual violence, has been committed to an institution or facility and remains there at age 20, and is still in need of treatment.  *See* 42 Pa.C.S. § 6403(a).  Reversing the trial court's ruling would have legal force or effect on J.C.'s current commitment. Accordingly, the issue is not moot.

- 6 -

be interpreted in the light most favorable to the accused. **Commonwealth v. Hall**, 80 A.3d 1204, 1212 (Pa. 2013); **see also** 1 Pa.C.S. § 1928(b)(1).

Instantly, J.C. is asking this Court to interpret and apply Section 6353 of the Juvenile Act, which states, in relevant part:

> No child shall initially be committed to an institution for a period longer than four years or a period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less. The initial commitment may be extended for a similar period of time, or modified, if the court finds after hearing that the extension or modification will effectuate the original purpose for which the order was entered. The child shall have notice of the extension or modification hearing and shall be given an opportunity to be heard. The committing court shall review each commitment every six months and shall hold a disposition review hearing at least every nine months.

42 Pa.C.S. § 6353(a).

As stated above, J.C. argues that before his commitment exceeded four years, Section 6353 required the Commonwealth to file a petition asking to extend his initial commitment and required the juvenile court to hold a hearing specifically addressing whether the court should extend the commitment. **See** Appellant's Brief at 13. J.C. asserts that the plain language of the statute references a "commitment review" hearing, a "disposition review" hearing, and an "extension or modification" hearing. Therefore, J.C. contends, the statute distinguishes between the three types of hearings and specifically requires the Commonwealth to request, and the juvenile court to hold, an "extension or modification" hearing prior to extending J.C.'s commitment beyond four years. **Id.** at 21. We disagree.

- 7 -

As an initial matter, the plain language of Section 6353 does not require the Commonwealth to file a petition prior to a child's commitment exceeding four years. Rather, Section 6353 requires notice of an extension or modification hearing, a hearing, and an opportunity for the child to be heard. There is no language in the statute that requires that the Commonwealth file a petition or make a formal request to extend a child's commitment.

Further, we disagree with J.C.'s assertion that the juvenile court did not comply with Section 6353 when it extended J.C.'s commitment beyond four years. We recognize that the language in the statute requires a court to review a child's commitment every six months, hold a disposition review hearing at least every nine months, and conduct an "extension or modification" hearing prior to extending a commitment beyond the statutorily allotted period. However, there is no language in the statute requiring that a juvenile court conduct these reviews and hearings at separate times. The clear purpose of the statute is to ensure that: (1) a court reviews a child's commitment and disposition on a regular basis; and (2) a child is given appropriate notice and an opportunity to be heard, and the court makes certain findings prior to committing a child beyond the statutorily allotted period.

As stated above, we must presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. **See** 1 Pa.C.S. § 1922(1). Without the plain language of the statute explicitly compelling such a result, it would be unreasonable and redundant to impose

the condition that a court, who is already holding regularly scheduled review hearings, hold separate hearings to review "commitment," "disposition," and "extension and modification." Accordingly, we hold that any review hearing can serve as an "extension and modification" hearing if the child has appropriate notice, the child has an opportunity to be heard, and the court makes certain findings pursuant to Section 6353.

In this case, on November 29, 2011, the juvenile court initially committed J.C. to Adelphoi Village for approximately five months, making a finding that J.C. was in need of treatment, supervision, and rehabilitation, and that placement was consistent with the protection of the public interest. At the five-month review hearing, the juvenile court made a finding that J.C.'s placement continued to be necessary and appropriate. The trial court continued to hold review hearings to address J.C.'s commitment and disposition, each time giving J.C. notice and an opportunity to be heard. Then, eight months prior to J.C.'s four-year commitment anniversary, the March 3, 2015 Failure to Adjust Allegation and Detention Hearing provided clear notice to J.C. that his next scheduled hearing would be an "extension or modification" hearing as J.C. was unable to remain in placement at Adelphoi Village. On March 10, 2015, after a hearing, the juvenile court made a finding that J.C continued to be in need of treatment, supervision, and rehabilitation, and that placement was consistent with the protection of the public interest – the same findings that originally made J.C.'s placement necessary. Accordingly, the

juvenile court complied with the requirements of Section 6353 prior to detaining J.C. for more than four years.

J.C. cites **Matter of Firster**, 457 A.2d 546 (Pa. Super. 1983), to support his claim that his commitment beyond four years is illegal. However, **Firster** is easily distinguished from this case. In **Firster**, the appellant remained confined beyond the ninety-day sentence that she could have received as an adult for Retail Theft as a summary offense. The juvenile court did not hold a review hearing until four months after the ninety-day deadline, and, therefore, this Court found that the juvenile court illegally detained appellant. **Id.** at 548-49. Unlike **Firster**, in this case, J.C. had at least ten review hearings prior to his four-year commitment anniversary. Accordingly, **Firster** is unpersuasive.

In conclusion, our review of the record reveals that prior to J.C.'s four-year commitment anniversary, J.C. had notice of an extension or modification hearing, J.C. had an opportunity to be heard, and the court made specific findings pursuant to Section 6353. As the juvenile court complied with Section 6353, J.C. was not committed illegally and the juvenile court properly denied J.C.'s Petition for Writ of *Habeas Corpus.* Accordingly, we find no error.

Order affirmed.


Judgment Entered.

- 10 -

Joseph D. Seletyn, Esq.
Prothonotary


Date:  <u>11/9/2018</u>