J-S14009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.E., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.E., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2422 EDA 2018 |

Appeal from the Dispositional Order Entered July 9, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-JV-0000019-2012

BEFORE:   LAZARUS, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 09, 2019**

J.E. appeals from the order, entered in the Court of Common Pleas of Montgomery County, dismissing her motion for *nunc pro tunc* relief.  The order incorporated the findings and conclusions of law from the Juvenile Court's May 31, 2018 order.[1]  On appeal, J.E. challenges the legality of her continued

---

[1] **See** Pa.R.J.C.P. 622, 628A(3).  It is clear that an initial order of disposition is a final order from which a juvenile may appeal as of right. **See In re M.D.**, 839 A.2d 1116, 1119 (Pa. Super. 2003).  Following the initial disposition, the disposition of a juvenile who has been adjudicated delinquent "is subject to frequent, mandatory review by the hearing court." **Id.**; Pa.R.J.C.P. 610(a)(1) (requiring dispositional review hearing at least every six months). Rule 622 provides for a motion for *nunc pro tunc* relief "no later than sixty days after the date that the error was made known."  Pa.R.J.C.P. 622A.  Rule 628A provides that the juvenile court's order on the motion for *nunc pro tunc* relief shall include the court's findings and conclusions of law, as well as a statement "explaining the right to appeal from the final order disposing of the motion, and of the time within which the appeal must be taken."  Pa.R.J.C.P. 628A(1), (3).

---

*   Retired Senior Judge assigned to the Superior Court.

commitment, arguing her continued detention violates section 6353(a) of the Juvenile Act and her due process rights. After our review, we affirm.

J.E., an intellectually challenged then-13-year-old female, was charged with involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, and incest. On March 30, 2012, J.E. admitted to three counts of misdemeanor indecent assault[2] against her six-year-old sister[3] and the court adjudicated J.E. delinquent. The court held a status hearing on April 27, 2012, after which J.E. was committed to Devereux Mapleton Campus (Devereux), a residential treatment facility in Chester County, by private placement. On November 26, 2012, J.E. was released from Devereux, and, following a hearing on that date, the court entered a disposition order detaining J.E. at Montgomery County Youth Center (MCYC), pending evaluation and re-disposition.

The court held a disposition hearing on December 13, 2012, after which the court ordered J.E. detained at MCYC pending approval for placement in a

---

[2] 18 Pa.C.S.A. § 3126(a)(7).

[3] J.E. had committed similar offenses against her sister in 2010, for which she received therapeutic foster care from April 2010 through June 2011. J.E. has a history of learning disabilities, poor impulse control, and poor boundaries. She has been diagnosed with Attention-Deficit Hyperactivity Disorder (ADHD) and Oppositional Defiance Disorder (ODD). Despite her learning disabilities and borderline intellectual functioning, J.E. understood the basics of the legal system and responded appropriately when questions were presented in a clear and simple manner; she was found competent by the court. She also acknowledged that she would take advantage of chances for opportunistic contact with younger children if unsupervised.

residential treatment facility. On February 21, 2013, J.E. was placed in a therapeutic foster home in Philadelphia, but she failed to adjust. On April 26, 2013, following another hearing, J.E. was removed from foster care and detained again at MCYC, at which time the court ordered psychosexual, psychological, and psychiatric evaluations.[4] On May 13, 2013, the court held a disposition hearing and ordered J.E. detained at MCYC, pending placement in a residential treatment facility. On May 31, 2013, the court held another disposition hearing and detained J.E. pending her placement at Devereux on June 10, 2013. Trial Court Opinion, 8/29/18, at 8 (Table of Orders Supporting Initial and Continued Commitment).

The court held disposition review hearings on November 22, 2013, May 29, 2014, October 30, 2014, March 26, 2015, and June 25, 2015. Following each hearing, the court continued placement at Devereux. *Id.*

On July 31, 2015, J.E. was discharged from Devereux, and the court ordered J.E. detained at MCYC. On August 21, 2015, J.E. was committed to the North Central Secure Treatment Unit (NCSTU) in Danville, Pennsylvania; the court noted that J.E. "[p]oses a risk to the community." *Id.* at 9. Dispositional review orders continued placement at NCSTU on January 27,

---

[4] Appellant notes that April 24, 2017 is "[f]our years from [the] date on which J.E. was removed from foster [care] and returned to detention." ***See*** Appellant's Brief, at 9. ***See also*** Trial Court Opinion, ***supra*** at 8 (Table).

2016, June 22, 2016, September 30, 2016, January 25, 2017, June 28, 2017 and September 20, 2017.  J.E., now age 20, remains confined at NCSTU.[5]

On February 28, 2018, pursuant to Rule 622, the Public Defender[6] filed a motion for *nunc pro tunc* relief on behalf of J.E., arguing that J.E.'s continued detention violated section 6353(a) of the Juvenile Act.  42 Pa.C.S.A. §§ 6301-6375.[7]  ***See*** Motion for *Nunc Pro Tunc* Relief, 2/18/18, at ¶ 5.a.   The petition

_____

[5] At the August 21, 2015 review hearing, the court found J.E. posed a risk to the community, and thus the court found placement at NCSTU was appropriate.  At the January 27, 2016 hearing, the court noted appropriate progress and compliance with the treatment plan; however, the June 22, 2016 review order noted only moderate progress and that J.E. "has shown resistance."  Of note, the court's dispositional review order indicated "[t]he juvenile has made moderate progress toward alleviating the circumstances which necessitate the original placement, in that juvenile completed some of her treatment work, but has shown resistance."  Order, 6/22/16.  At the September 30, 2016 review, the court noted inconsistent compliance with the treatment plan, and then compliance in January 2017.  At the January 25, 2017 review hearing, it was determined J.E. was resistant to treatment, and indicated her continued sexual desire towards young children.  The June  28, 2017 review order noted compliance, but stated, "still has work to complete before a successful discharge can be recommended."  Dispositional Review Order, 6/28/17. The September 20, 2017 order continued placement, noting "inconsistent progress, inconsistent with her efforts in treatment." Dispositional Review Order, 9/20/17.

[6] J.E. was privately represented by Brian J. Smith, Esquire, from April 27, 2012 until January 24, 2018, when Attorney Smith petitioned to withdraw.  The court granted Attorney Smith's petition to withdraw and appointed the Public Defender to represented J.E.

[7] Section 6353 provides, in relevant part:

**§ 6353.  Limitation on and change in place of commitment**

alleged J.E. had been confined in placement or detained at MCYC for a total of 5 years and 8 months. *Id*. at ¶ 7.j.

In an order dated May 31, 2018, the Juvenile Court explained its reasoning for continuing commitment. The court's order states, in relevant part:

> The only ground for relief supported with any averments of fact is that J.E.'s "rights were violated by a failure to comply with the statutory parameters of juvenile sentencing as required by 42 Pa.C.S. § 63[5]3(a), requiring immediate release from detention." Motion, ¶ 5.a.

---

> (a) General rule.--*No child shall* **initially** *be committed to an institution for a period longer than four years or a period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less*. **The initial commitment may be extended for a similar period of time, or modified, if the court finds after hearing that the extension or modification will effectuate the original purpose for which the order was entered.** The child shall have notice of the extension or modification hearing and shall be given an opportunity to be heard. The committing court shall review each commitment every six months and shall hold a disposition review hearing at least every nine months.

42 Pa.C.S.A. § 6353(a)(emphasis added).

Here, J.E. admitted to misdemeanor indecent assault, an offense punishable by up to five years' imprisonment when committed by an adult. **See** 18 Pa.C.S.A. § 1104(1) (person convicted of misdemeanor may be sentenced to imprisonment for definite term which shall be fixed by court and shall be not more than: (1) five years in case of misdemeanor of first degree). Thus, section 6353(a) prohibits the court from entering an initial detainment order for more than four years unless the court meets certain requirements. **See** 42 Pa.C.S.A. § 6353(a).

At the time of the original commitment, section 6353(a) allow[ed] a judge to commit a juvenile to an appropriate facility for a term not exceeding the shorter of either four years or the term of total confinement to which she could have been sentenced if she had been an adult convicted of the offense that served as the basis for the delinquent act. After that, "[t]he initial commitment may be extended for a similar period of time, or modified, if the court finds after hearing that the extension or modification will effectuate the original purpose for which the order was entered."

The text of section 6353(a) does not limit the judicial power to extend the commitment in any way. The text of the Juvenile Act as a whole does not limit the power of the judge to extend commitment, other than the implied loss of jurisdiction when the juvenile reaches adulthood.[8]

_____

[8] The Juvenile Act defines "child" in section 6302 as follows:

"Child." An individual who:

(1) is under the age of 18 years;

(2) **is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years;** or

(3) is under the age of 21 years and was adjudicated dependent before reaching the age of 18 years, who has requested the court to retain jurisdiction and who remains under the jurisdiction of the court as a dependent child because the court has determined that the child is:

(i) completing secondary education or an equivalent credential;

(ii) enrolled in an institution which provides postsecondary or vocational education;

(iii) participating in a program actively designed to promote or remove barriers to employment;

(iv) employed for at least 80 hours per month; or

(v) incapable of doing any of the activities described in subparagraph (i), (ii), (iii) or (iv) due to a medical or

As a result, the Act gives the judge the power to extend the initial commitment as many times as necessary to effectuate its purpose, as long as each extension, by itself, does not exceed the maximum term allowable for the original commitment [here, four years].

Section 6353(a) does not expressly specify when a judge may extend the initial commitment, but the text of the section and the context of the Juvenile Act as a whole suggests that the judge may do so at the time of a periodic review of the commitment or disposition. Section 6353(a) requires a commitment review every six months and a disposition review every nine months.

The text of section 6353(a) does not require the judge to state the term of the extended commitment. The text of the rest of the [A]ct does not expressly or impliedly impose such an obligation. Therefore, if a judge orders a juvenile to remain committed, whether a the same facility or a different one, but does not state the term of the extended commitment, then the term of the extension lasts, as a minimum, until the time the court must review the commitment or disposition.[1]

The motion and exhibits filed on behalf of J.E. show that the judges of the juvenile court performed those reviews as scheduled, and when they did, they determined that J.E. continued to be a danger to the public, or at least continued to be in need of treatment. At each review hearing, the judge ordered her to remain committed, or changed the place of commitment when necessary. Each of the extensions of the term of commitment was lawful. Thus, the claim that J.E. is being unlawfully confined lacks merit.

[1] The only exception would be if the sentence for [the] crime that served as the basis for the delinquent act is shorter than the time before the next review hearing. The circumstances of this case do not fall within that exception.

Order, 5/31/18, at 2-4.

behavioral health condition, which is supported by regularly updated information in the permanency plan of the child.

42 Pa.C.S.A. § 6302 (emphasis added).

In its order, the court stated that the motion, as pled, raised no issue of material fact and the court intended to deny it without a hearing. The court's order stated that J.E. "may respond to this proposed denial within twenty days of the date this order is filed on the docket. Thereafter the undersigned shall either: deny all relief sought in the motion; grant leave to file an amended motion; or direct that the proceedings continue." *Id.* at 4-5. The Public Defender filed no response.[9] The court denied the motion, and this appeal followed.

On appeal, J.E. raises the following issues:

1. Did the trial court err in dismissing [J.E.'s] claim that she is illegally confined because the juvenile court extended her term of commitment beyond the maximum term of confinement permitted under the Juvenile Act?

---

[9] In appellant's brief, the Public Defender states that the juvenile court appointed the Office of the Public Defender on January 26, 2018, and on February 28, 2018, the "newly-assigned assistant public defender filed the underlying motion[.]" Appellant's Brief, at 9. The Public Defender goes on to state that it "did not timely amend the motion and on July 6, 2018, the juvenile court issued a final order denying the motion." Appellant's Brief, at 10. The brief refers to "newly-assigned assistant public defender," "new counsel," "defense counsel" and the "public defender" in one paragraph. *Id.* Although not entirely clear, it seems that the public defender is raising the ineffectiveness of another member or members of the public defender's office. "[A]s a general rule, a public defender may not argue the ineffectiveness of another member of the same public defender's office since appellate counsel, in essence, is deemed to have asserted a claim of his or her own ineffectiveness." *Commonwealth v. Ciptak*, 665 A.2d 1161, 1161–62 (Pa. 1995). In any event, we find this inconsequential since the failure to amend the motion did not pertain to the legality of J.E.'s ongoing commitment; the public defender states in its brief that it is proceeding "solely on the legality of the minor's ongoing commitment." Appellant's Brief, at 10 n.2

- 8 -

2. Did the trial court err in dismissing [J.E.'s] claim that she is illegally confined because the juvenile court extended her term of commitment without conducting a hearing on the issue of extension, in violation of the Juvenile Act?

3. Did the trial court err in dismissing [J.E.'s] claim that her due process rights were violated where the juvenile court extended her institutional commitment beyond the statutory maximum without notice of the extension, without an opportunity to be heard on the issue of the extended sentence, without procedural safeguards against self-incrimination, without a reviewable court record, and absent other procedural safeguards?

Appellant's Brief, at 4. We address these issues together as they each concern the legality of J.E.'s ongoing commitment.

The interpretation and application of a statute is a question of law. *C.B. v. J.B.*, 65 A.3d 946, 951 (Pa. Super. 2013). As with all questions of law, we employ a *de novo* standard of review and a plenary scope of review to determine whether the court committed an error of law. *Id.*

Here, we are asked to interpret and apply section 6353 of the Juvenile Act. As noted above, the statute states that the *initial* commitment shall not exceed four years or a period longer than the juvenile could have been sentenced had she been convicted of the offense as an adult, whichever is less. 42 Pa.C.S.A. § 6353(a). J.E. admitted to committing misdemeanor indecent assault, an offense punishable by up to five years' imprisonment when committed by an adult. *See* 18 Pa.C.S.A. § 1104(1). Thus, pursuant to section 6353(a), the court was prohibited from entering an *initial* commitment order for more than four years. *See* 42 Pa.C.S.A. § 6353(a). Essentially, J.E. argues that her commitment beyond the four years required

- 9 -

an "extension hearing." **See** Appellant's Brief, at 10. We disagree. This Court's recent decision in **Commonwealth v. J.C.**, 199 A.3d 394 (Pa. Super. 2018), is dispositive.[10]

In **J.C.**, the juvenile, who, like J.E., was adjudicated delinquent of indecent assault as a first-degree misdemeanor, was committed to a placement facility, and the Commonwealth sought to extend his commitment beyond four years. **Id.** at 397. J.C. argued that he had been detained for more than the statutory maximum sentence of five years, and that the juvenile court should have held a hearing at the expiration of the four years. **Id.** Specifically, J.C. argued that the Commonwealth failed to file a petition to extend his initial commitment beyond four years and the court failed to hold a hearing on the issue prior to the expiration of four years, as required by statute. J.C. asserted that the plain language of the statute references a "commitment review" hearing, a "disposition review" hearing, and an "extension or modification" hearing." **Id.** at 399. Therefore, J.C. argued, because the statute specifies three types of hearings, the Commonwealth is required to request, and the court is required to hold, an "extension or

---

[10] In Appellant's Reply Brief, the public defender erroneously claims that the Commonwealth cannot rely on **J.C.**, because this Court has granted reargument *en banc* in that case and the opinion has been withdrawn. Appellant's Brief, at 6. The case to which the public defender refers, captioned **In re J.C.**, is a different case, raising a different issue, and is docketed at 1391 WDA 2017. **Commonwealth v. J.C.**, on which the Commonwealth relies and which we find dispositive, is docketed at 1059 WDA 2017. The Commonwealth filed an application for post-submission communication, clarifying this error, which this Court grants. **See** Pa.R.A.P. 2501.

modification" hearing prior to extending commitment beyond four years. *Id.*

This Court disagreed, stating:

> [W]e disagree with J.C.'s assertion that the juvenile court did not comply with Section 6353 when it extended J.C.'s commitment beyond four years. We recognize that the language in the statute requires a court to review a child's commitment every six months, hold a disposition review hearing at least every nine months, and conduct an "extension or modification" hearing prior to extending a commitment beyond the statutorily allotted period. However, **there is no language in the statute requiring that a juvenile court conduct these reviews and hearings at separate times. The clear purpose of the statute is to ensure that: (1) a court reviews a child's commitment and disposition on a regular basis; and (2) a child is given appropriate notice and an opportunity to be heard, and the court makes certain findings prior to committing a child beyond the statutorily allotted period.**

*Id.* at 399 (emphasis added). Thus, we held that **any review hearing** can serve as an "extension [or] modification" hearing "if the child has appropriate notice, the child has an opportunity to be heard, and the court makes certain findings pursuant to Section 6353." *Id.*

Regular review of juveniles and their commitments to monitor the juvenile's progress, address their treatment needs, and provide restorative justice is fundamental to the purposes of the Juvenile Act. *See* 42 Pa.C.S.A. § 6301(b)(2). Our review of the record indicates that, in accordance with section 6353, Judge Demchick-Alloy held regular disposition/placement review hearings, considered J.E.'s progress or lack of progress at each hearing, and made findings to support the dispositions in accordance with

section 6353. *See supra* n.4. *See also In re Love*, 646 A.2d 1233, 1238

n.5 (Pa. Super. 1994) (Juvenile Court's discretion in implementing a

disposition is broad; it is flexible and court has considerable power to review

and modify commitment, taking into account juvenile's rehabilitative progress

or lack theerof). Here, Judge Demchick-Alloy presided over J.E.'s case for

the past six years; she held disposition/placement review hearings every two

to five months, clearly in compliance with the statute and the juvenile court

rules. Between April 26, 2013 and April 24, 2017, the court held ten review

hearings. J.E. had notice and an opportunity to be heard at each hearing, and

she was present for six of those hearings.[11] Following each hearing, the court

_____

[11] J.E. claims that her due process interests have been compromised because her commitment has led to institutionalization past her nineteenth birthday, triggering referral to the Pennsylvania Sex Offender Assessment Board pursuant to 42 Pa.C.S.A. § 6358. Appellant's Brief, at 21. J.E. argues that section 6358 mandates that "children adjudicated delinquent of certain charges be assessed by the State Sexual Offenders Assessment Board [(SOAB)] for a determination of what is the practical equivalent of a Sexually Violent Predator ("SVP") designation. *Id.* The Commonwealth responds that this Court has held Act 21, which governs the commitment of sexually violent children who have been found to be in need of treatment pursuant to section 6358, unconstitutional. *See* Commonwealth's Brief, at 17-18 n.13, citing *In re J.C.*, 2018 PA Super 335, 2018 WL 6520225 (Pa. Super. 2018). However, two days after the Commonwealth filed its brief, this Court granted reargument en banc in that case and withdrew the opinion. *See* Order, No. 1391 WDA 2017, filed 2/15/18. *In re J.C.* is scheduled for argument before this Court en banc on May 29, 2019. *See supra* note 10. We also note that the Public Defender points out that on February 20, 2019, the SOAB concluded J.E. "does NOT meet the criteria for involuntary inpatient civil commitment under Act 21." SOAB Report, 2/20/19. *See* Appellant's Reply Brief, at 1, n.2. That claim, therefore, is moot. *See In re R.D.*, 44 A.3d 657 (Pa. Super. 2012) (issue can become moot during pendency of appeal due to intervening change in facts of case or intervening change in applicable law).

determined that J.E. continued to pose a threat to the community or, at the very least, continued to be in need of treatment.

The limitation period of four years applies only to an initial placement, and the clear language of section 6353(a) provides that an initial commitment may be extended or modified if the extension or modification is necessary to "effectuate the original purpose for which the order was entered[.]" 42 Pa.C.S.A. § 6353(a).[12] Therefore, J.E.'s claim that the court "never conducted an extension hearing[,]" Appellant's Brief, at 10, in compliance with the statute, is meritless. *See J.C.*, *supra* at 399 (unreasonable and redundant to impose condition that court, which is already holding regularly scheduled hearings, hold separate hearings to review "commitment," "disposition," and "extension and modification."). As long as the limitation period is not exceeded for the *initial* commitment, and the disposition and commitment are regularly reviewed, section 6353(a) is satisfied. We find Judge Demchick-Alloy complied with the statute.

Order affirmed.

_____

[12] *See* 1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursing its spirit."); *see also Cagey v. Commonwealth*, 179 A.3d 458, 468 (Pa. 2018) ("[T]he best indication of the General Assembly's intent may be found in a statute's plain language.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/9/19