# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania      :
                                  :
            v.                    :     No. 789 C.D. 2019
                                  :     SUBMITTED:  February 8, 2021
Beverly J. Oswald,               :
                 Appellant       :


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
          HONORABLE MARY HANNAH LEAVITT, Judge (P)
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  March 4, 2021**

Beverly J. Oswald, Appellant, appeals her conviction of a summary offense of harboring a dangerous dog under Section 502-A of the Dog Law,[1] 3 P.S. § 459-502-A, after a trial *de novo* before the Court of Common Pleas of Bucks County.  We adopt the trial court's opinion and affirm.

The facts as found by the trial court in its opinion issued under Pennsylvania Rule of Appellate Procedure 1925(a) are as follows.  Appellant is the owner of a dog named Argo, a Doberman Pinscher, which was the subject of the summary citation at issue.  On September 18, 2018, Argo, as well as another Doberman owned by Appellant and another dog of a smaller, unidentified breed were present with Appellant's husband at the Carl Sandburg Middle School in

---

[1] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § 459-502-A. Section 502-A was added by Section 2 of the Act of May 31, 1990, P.L. 213.

Middletown Township, Bucks County. The three dogs, which were unrestrained, attacked a jogger who had come within ten feet of the dogs before noticing them. The dogs knocked the victim to the ground and mauled her about the upper torso near her neck in the shoulder area, back, side, and both arms. All three dogs attacked and bit the victim, with both Dobermans breaking her skin resulting in lacerations. The victim was able to get to her feet and ran to Appellant's husband and jumped on his back in an effort to get away from them. This did not end the attack, as the dogs continued to snap and bite. Finally, at Appellant's husband's command, the dogs broke off the attack and retreated to the cab of his truck. The bites suffered by the victim were on her left and right upper arms, left wrist, left shoulder, and rib cage. Within forty-five minutes of the attack, the victim was able to get to a nearby hospital emergency room where her wounds were treated and sutured, and rabies shots were administered.

A state dog law enforcement officer issued Appellant two citations of harboring a dangerous dog under Section 502-A of the Dog Law, one for each of the Dobermans. After a summary trial, a magisterial district judge dismissed one citation relating to one Doberman[2] and found Appellant guilty of the citation related to Argo. Appellant filed a timely summary appeal and was tried *de novo* before the trial court. On March 15, 2019, the trial court found Appellant guilty of one count of harboring a dangerous dog and reimposed the statutory fines and restitution ordered by the magisterial district court. Appellant filed a timely notice of appeal[3] and a concise statement of errors complained of on appeal under Pennsylvania Rule

---

[2] The record does not indicate why the magisterial district judge dismissed the citation relating to the one Doberman and not the other relating to Argo.

[3] Appellant initially filed her appeal in the Superior Court, which transferred the matter to this Court.

of Appellate Procedure 1925(b), which were disposed of by the trial court in an opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

On appeal, Appellant raises two issues: first, whether there was sufficient evidence to support the conviction when, Appellant argues, the Commonwealth failed to prove beyond a reasonable doubt that the victim's wounds were "severe" within the meaning of the Dog Law, and second, whether there was sufficient evidence when, Appellant argues, the Commonwealth failed to prove beyond a reasonable doubt that the dog who is the subject of the citation caused the injuries to the victim.[4]

---

[4] Appellant raises a third, unenumerated issue in the course of her brief, to the effect that the attack on the victim was not "unprovoked." (Appellant's Br. at pp.15-16). This issue was not previously raised in Appellant's statement filed under Pennsylvania Rule of Appellate Procedure 1925(b) and is therefore waived. Pa. R.A.P. 1925(b)(4)(vii). At all events, the victim's testimony provided ample evidence that the attack was unprovoked.

We believe that the trial court ably addressed the issues raised and therefore adopt its opinion,[5] which is attached hereto.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[5] We note that the trial court found Appellant guilty of what it considered the lesser included offense, which occurs when the dog has "[a]ttacked a human being without provocation." 3 P.S. § 459-502-A(a)(1)(iii). While this is a valid analysis, we believe that the trial court might simply have analyzed the enumerated charge, 3 P.S. § 459-502-A(a)(1)(i), which occurs when a dog has "inflicted severe injury on a human being without provocation on public or private property." A severe injury is defined by Section 102 of the Dog Law in relevant part as "any physical injury that results in . . . disfiguring lacerations requiring multiple sutures . . . ." 3 P.S. § 459-102. Appellant's contention is that the victim's injuries, which are undisputed to have required sutures on several portions of her body, as established by photographic evidence taken shortly after the attack, were not "disfiguring." While the trial court did not address Appellant's contention, we note not only that the trial court viewed the photographs, but also that lacerations requiring multiple sutures from the dog bites meet both a common sense understanding of "disfiguring" and the dictionary definition of "disfiguring" offered by Appellant, "[s]poiling the appearance of a person or thing" (Appellant's Br. at pp.11-12, citing an unidentified edition of the Oxford English Dictionary). *See* "disfigure," American Heritage Dictionary of the English Language (5th ed. 2020) ("[t]o mar or spoil the appearance or shape of; deform").

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 789 C.D. 2019 |
| | : | |
| Beverly J. Oswald, | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 4th day of March, 2021, the opinion of the Court of Common Pleas of Bucks County appended hereto is ADOPTED and its order in the above-referenced matter is AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

*See Attached List*
*Williams /Weintraub* 6·10·19

THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL ACTION – LAW

| | | |
|---|---|---|
| COMMONWEALTH OF | : | NO. CP-09-SA-0000805-2018 |
| PENNSYLVANIA | : | |
| | : | |
| v. | : | Superior Court Docket No.: 1103 EDA 2019 |
| | : | |
| | : | |
| BEVERLY OSWALD | : | |
| Appellant | | |

## OPINION

On November 13, 2018 Beverly J. Oswald ("Appellant" or "Oswald") was found guilty of

the summary offense of harboring a dangerous dog as set forth in Section 502–A of the Dog Law.[1]

Oswald admitted to the investigating State Dog Warden that the dog in question was owned

by her. Oswald's dog along with two other dogs owned by her were present and were not physically

---

[1] Act of December 7, 1982, P.L. 784, *as amended,* added by Section 2 of the Act of May 31, 1990, P.L. 46.
3 P.S. § 459–502 A provides, in pertinent part,
   (a) Summary offense of harboring a dangerous dog.—Any person who has been attacked by one or more dogs, or anyone on behalf of such person, a person whose domestic animal has been killed or injured without provocation, the State dog warden or the local police officer may file a complaint before a district justice, charging the owner or keeper of such a dog with harboring a dangerous dog. The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the district justice finds beyond a reasonable doubt that the following elements of the offense have been proven:
      (1) The dog has done one or more of the following:
         (i) Inflicted severe injury on a human being without provocation on public or private property.
         (ii) Killed or inflicted severe injury on a domestic animal without provocation while off the owner's property.
         (iii) Attacked a human being without provocation.
         (iv) Been used in the commission of a crime.
      (2) The dog has either or both of the following:
         (i) A history of attacking human beings and/or domestic animals without provocation.
         (ii) A propensity to attack human beings and/or domestic animals without provocation. A propensity to attack may be proven by a single incident of the conduct described in paragraph (1)(i), (ii), (iii) or (iv).
      (3) The defendant is the owner or keeper of the dog.

N. B. It is your responsibility
to notify all interested parties
of the above action.

restrained in the area of the Carl Sandburg Middle School on September 30, 2018. At that time in the day time hours; the victim, Nancy Cochran, was out jogging as she normally did in that area. A male person identified as James Oswald, husband of Beverly Oswald, had the three dogs in his possession at the time of the attack. As the victim was jogging some distance away, the three dogs; the two Doberman Pinschers and the third unidentified dog pursued her. The two Dobermans attacked without provocation. They knocked the victim to the ground and mauled her about the upper torso near her neck in the shoulder area, back, side and both arms. Initially, when the victim saw all three dogs charging her, she stopped running hoping that would terminate the pursuit. Instead, the two Dobermans knocked her to the ground biting her repeatedly. She was able to get to her feet and ran to the dogs' handler and jumped on his back to get away from the dogs. This did not end the attack as the dogs continued to snap and bite. However, on the man's command, the dogs broke off the attack and retreated to the cab of the man's truck.

The bites suffered by the victim were on her left and right upper arms, left wrist, left shoulder and rib cage. It was note-worthy that the dogs obeyed the owner's direction to terminate the attack. That, while note-worthy as circumstantial evidence, was not taken into account in our factual determinations. (N.T. 3/15/19, pp. 6-11.)

Within forty-five minutes of the attack, the victim was able to get to a nearby hospital emergency room where her wounds were treated, sutured and rabies shots were administered. The victim also suffered serious psychological injuries resulting in inability to sleep along with significant life style changes regarding jogging with her children and carrying a weapon to protect herself from future attacks. (N.T. 3/15/19, pp. 12-17.)

The fact of suturing is one, but only one issue suggesting that her injuries were serious and the description as puncturing as opposed to lacerations is not dispositive. She, of course, had

2

follow-up care for her medical needs and has been receiving treatment from her therapist. It is clear this victim suffered great physical pain, psychological distress including recurring nightmares, and has demonstrated symptoms of post- traumatic stress syndrome. She is unable to run with her children who would have normally been with her at the time in question, and when she runs, she carries a weapon to protect herself.

Oswald asserts that the evidence was not sufficient to satisfy the elements of the offense set out in the applicable statute because the injuries sustained were not described as "lacerations". The terminology used by the medical staff to describe the injuries was that of "puncture wounds." We had little trouble in rejecting that argument. Merriam-Webster Dictionary defines a laceration as a torn and ragged wound. As defined in the "Dog Law" at 3 Pa.C.S. § 459-102, a severe injury is "[a]ny physical injury that results in broken bones or disfiguring lacerations requiring multiple sutures or cosmetic surgery." Thus, Appellant argues that the wounds do not satisfy the requirements of the Act. We disagree.

Curiously, Appellant was convicted of harboring only one of the two Dobermans. That was the case despite the clear evidence that both Dobermans participated in the attack. Since the appeal was limited to the one dog for which Appellant was convicted of harboring, we were constrained to limit the conviction before us on appeal to the one dog. Furthermore, the disposition was limited to the maximum fine of $300 plus costs and restitution. The grand total of the restitution amounted to $340.25.

The issue raised in the appeal was that the Citation makes reference only to the sole subsection (i) which provides for criminal responsibility only where the dog in question "[I]nflicted severe injury on a human being without provocation on public or private property." Subsection (iii), which was not specified in the Citation, provides for liability requiring only that

3

the dog "[a]ttacked a human being without provocation." As such, Appellant appealed our decision and elected to appeal to the Pennsylvania Superior Court.

Pursuant to Pa.R.A.P. §1925(b), and without direction, Appellant filed a Concise Statement of Matters on April 12, 2019. Our review satisfies us that jurisdiction lies in the Commonwealth Court, as opposed to the Superior Court, because the Dangerous Dog Law at 3 P.S. § 459-502-A is not a penal statute under the Crimes Code (Title 18), but is a regulatory statute, administered and enforced by the Department of Agriculture (Title 7, Chapter 27 of the Pa.Code). Therefore, in accordance with 42 Pa.C.S. § 762 A(2)(ii), the Commonwealth Court has exclusive jurisdiction of appeals from final orders of the Courts of Common Pleas in Commonwealth regulatory criminal cases for criminal actions. The proceedings for the instant violation involve a regulatory statute administered by a Commonwealth agency not included in Title 18 relating to crimes and offenses. Commonwealth v Hake, 738 A. 2d 46, 47 FN 3 (Pa.Cmwlth. 1999). No issue has been raised contesting jurisdiction in the Pennsylvania Superior Court and therefore the appeal is apparently perfected. The Superior Court *sua sponte* determined the question of jurisdiction and transferred the matter to the Commonwealth Court. Trumbull Corp. v. Boss Constr., Inc., 747 A.2d 395, 398–99 (Pa.Super. 2000).; *see also* Karpe v. Borough of Stroudsburg, 461 A.2d 859, 860 (Pa.Super. 1983).

The Statement of Matters raised on appeal alleges the following claims of error:

1. Whether there was sufficient evidence to support the conviction when the Commonwealth failed to prove beyond a reasonable doubt that the victim's wounds were "severe" as required by 3 Pa.CS § 459-502-A(1)(i), and as defined in 3 Pa.C.S. § 459-102.

2. Whether there was sufficient evidence to support the conviction when the Commonwealth failed to prove beyond a reasonable doubt that the dog who is the subject of the citation caused any injuries to the victim.

4

## DISCUSSION

This case raises a unique question of interpreting whether under the 1996 and 2008 amendments to the controlling statute, owners or keepers of dogs should be criminally liable for an unprovoked attack on a human being charged under 3 P.S. 502-A (a) (1) (i). As described above, subsection (i) requires the infliction of severe injuries (as defined in the definitions section of the Dog Law). Subsection (iii) requires only that the attack on a human be "unprovoked." Again, Appellant was charged only under subsection (i) although the description of the complained of behavior included language of subsection (iii); namely, that the Appellant's dog launched an unprovoked attack on a human being in a public place, to wit - school property. Thus, Appellant was placed on notice of the complained of behavior.

## STATUTORY CONSTRUCTION OF THE DOG LAW

Although not material to our decision, and merely as an aside anecdotally, it is common knowledge and knowledge which is shared by the American Kennel Club, one of the recognized experts in most matters involving dogs, that a Doberman Pinscher is classified as a "working" breed, often popularly known as being ferocious and aggressive. Dobermans were originally bred for those traits for use as protection dogs. And, while it is possible for a Doberman to have an undeserved bad reputation because of their service to the police and military, that reputation should alert an owner to its potential and proclivity to inflict serious and severe injury. Clearly, a dog, like any individual living entity, has its own individual traits and proclivities, but that may not excuse an owner from taking appropriate precautions to prevent injuries to others in public places by dogs with a tendency to be aggressive. That applies particularly to the immediate area of schools where one should expect children to be present who would naturally participate in physically active behaviors which could naturally activate aggressive behaviors in all dogs and particularly

5

Dobermans.

Appellant apparently argues that we erred for our use of the commonsense definition of the phrase "severe injury" and not the legal definition of "severe injury" as that term is defined in the Statute. When a party raises a claim involving the proper interpretation of the trial court's construction of a statute, the determination of the issue is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, courts must be mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent. Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission, 198 A.3d 1056 (Pa. 2018). Only when the words of the statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in the Statutory Construction Act. Commonwealth v. Walter, 93 A.3d 442, 450-51 (Pa. 2014). In construing a legislative enactment, we must ascertain and give effect to legislative intention as expressed in language employed. Bonasi v. Board of Adjustment of Haverford Tp., 115 A.2d 225, 226 (Pa. 1955); Commonwealth v. Gugliotta, 124 A.2d 466, 467-68 (Pa. 1956). In determining the meaning of words in a statute, the primary object is to ascertain and give effect to the intention of the Legislature. Howarth v. Gilman, 65 A.2d 691, 694 (Pa.Super. 1949), *affirmed* 73 A.2d 655; Commonwealth v. Chalfant, 42 A.2d 587, 589 (Pa. 1945). Under the Pennsylvania rules of statutory construction, courts are directed at all times to seek to ascertain and effectuate the legislative intent underlying the enactment of a particular statute. The goal in interpreting any statute is to ascertain and effectuate the intention of the

6

General Assembly while construing the statute in a manner that gives effect to all of its provisions. Commonwealth v. J.C., 199 A.3d 394, 398 (Pa.Super. 2018). As a general rule, the best indication of legislative intent is the plain language of a statute. In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage" while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S.1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia* the occasion and necessity for the statute, the mischief to be remedied, the object to be attained, the consequences of a particular interpretation and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant. The controlling statute in this matter is not considered penal. Hake, 738 A. 2d at 47.

In respect to the "Dog Law" at issue here, we were also mindful of the fact that subsection (iii) of the same section setting out the "severe injury" language provides that a dog that "attacked a human being without provocation," as clearly occurred in the instant matter, is defined as a dangerous dog. It would be unreasonable to conclude that the legislature intended that a victim who was attacked by a dog that inflicted severe and serious injuries, such as those experienced by the instant victim, was not attacked by a dangerous dog. Appellant's assertion that because the medical staff used general language describing the injury sustained by this victim as "punctures" instead of "lacerations" the victim did not experience a "severe injury" is unavailing. The general legislative intent to criminalize the failure to prevent unprovoked attacks on humans by way of the

7

literal interpretation of essentially synonymous, ancillary and collateral language describing the evils to be prevented by the statute must be rejected.

Furthermore, an unprovoked attack on a human has no requirement of any injury, severe or otherwise to support the activation of the provisions of the "Dog Law." Hence, the attack on the instant victim must be included in the charge as a lesser included offense as that term is defined. Historically, the settled law in Pennsylvania has been that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged. The statutory-elements approach began at common law and is used in the federal courts and in various state courts. Under this approach, the trial court is required to identify the elements of both the greater charge and the lesser charge and determine whether it is possible to commit the greater offense without committing the lesser offense. If it is not possible, then the lesser offense is considered a lesser-included. Commonwealth v. Sims, 919 A.2d 931, 938 (Pa. 2007). This doctrine "promotes judicial economy," "avoids inconsistent results," and enhances "the quality of jury deliberations by assuring that factfinders, informed of the option of convicting of related offenses, focus their attention on the presence or absence of those elements that distinguish the greater or lesser offenses." Id. There have been three varying approaches in making the determination that two similarly presented offenses may be considered lesser included for which a conviction may obtain though not overtly charged. Id. at 938–43.

Pursuant to the cognate-pleading approach, there is no requirement that the greater offense encompass all of the elements of the lesser offense. Rather, it is sufficient that the two offenses have certain elements in common. The focus of this approach is on the pleadings as the trial court must determine whether the allegations in the pleadings charging the greater offense include allegations of all of the elements of the lesser offense. If so, the lesser charge is considered a lesser-

included offense of the greater charge. As this approach centers on the pleadings of the case, notice and due process violations are not generally grave concerns. Id.

Finally, the evidentiary approach looks to the actual evidence established at trial to assess the relationship between the greater and lesser charges. The lesser offense may have elements that are distinct from the greater offense and still be considered a lesser-included offense, as long as the evidence presented at trial to prove the greater offense actually establishes the elements of the lesser offense. Generally, courts adopting this approach require that the same underlying conduct establish the elements of both offenses. Id.; Commonwealth v. Anderson, 650 A.2d 20, 24 (Pa. 1994); Commonwealth v. Tarver, 426 A.2d 569, 570 (Pa. 1981); Commonwealth v. Jones, 912 A.2d 815 (Pa. 2006).

In the instant matter, due process concerns of notice and fairness are not fully implicated because the charges includes specific notice that an attack on a human is express. Commonwealth v. Bryant, 79 A.2d 193, 198 (Pa. 1951). The Citation in this case that serves as the criminal information provided fair notice of every crime of which a criminal defendant is accused. Commonwealth v. Khorey, 555 A.2d 100, 108 (Pa. 1989).

SUFFICIENCY OF EVIDENCE

The standard we are to apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. This court as fact finder is not required to view the facts and circumstances established by the Commonwealth in a manner to preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the court as fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

9

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the court as finder of the facts, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Commonwealth v. Jones, 886 A.2d 689, 704 (Pa.Super. 2005), *appeal denied*, 897 A.2d 452 (Pa. 2006). We had no difficulty in resolving that both dogs attacked the victim, and the fact that the district court chose to exonerate one of the dogs does not preclude this court from concluding that the remaining dog participated in the attack. The victim's uncontradicted and completely credible testimony that both dogs attacked her is more than sufficient to support our findings. The physical evidence of the multiple bite wounds speak for themselves.

## CONCLUSION

This appeal should be promptly denied by whichever appellate court eventually reviews this matter.

BY THE COURT:

_____
CLYDE W. WAITE, S.J.

Date: June 10, 2019

10